IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 25-cv-01073-NYW-CYC

DOWNTOWN'S HEALTH CARE, LLC, d/b/a REGEN REVOLUTION, LLC, and RACHEL ANDERS,

    Plaintiffs,

v.

DR. GARY RADEMACHER,

    Defendant.

## ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendant's Partial Motion to Dismiss (the "Motion" or "Motion to Dismiss"). [Doc. 11]. The Court has reviewed the Motion to Dismiss, the related briefing, and applicable case law, and concludes that oral argument would not assist in the resolution of the Motion. For the reasons stated herein, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

These facts are taken from Plaintiffs' Complaint, [Doc. 1], and are presumed true for purposes of this Order. In 2019, Plaintiff Rachel Anders ("Ms. Anders") was an employee and 5% owner of Plaintiff Downtown's Health Care, LLC, d/b/a ReGen Revolution, LLC ("ReGen"). [*Id.* at ¶ 9]. At the time, Defendant Gary Rademacher ("Defendant" or "Dr. Rademacher") was ReGen's "principal owner" and practice manager. [*Id.* at ¶¶ 95–96]. At some unidentified point, Dr. Rademacher began to discuss with Ms. Anders the possibility of her acquiring his majority stake in the practice. [*Id.* at ¶ 10]. In

late 2023, Ms. Anders and Dr. Rademacher executed a Purchase Agreement,[1] and Ms. Anders acquired Dr. Rademacher's share for $735,000, "payable through a variety of loans taken out by Ms. Anders, and paid to Dr. Rademacher." [*Id.* at ¶¶ 15–17].

Plaintiffs' Complaint alleges a number of ways in which Dr. Rademacher allegedly breached or acted in contravention of applicable contractual terms. For example, the Purchase Agreement stated that, at closing, "[a]ll the Company's cash on hand and in banks" would be distributed to Dr. Rademacher, except that ReGen could "retain an operating reserve" of $500,000 at closing. [*Id.* at ¶ 18]. Plaintiff alleges that despite this provision "making it appear that ReGen had more than the amount the practice would 'retain' in its reserve" (i.e., $500,000), Dr. Rademacher actually deposited funds into ReGren accounts "to enable closing to occur." [*Id.* at ¶ 19]. Additionally, under the Purchase Agreement, all ReGen assets were to be included as part of the purchase, but after the sale, Dr. Rademacher attempted to wrongly obtain ReGen's IRS refund checks. [*Id.* at ¶¶ 20–22, 44–46, 55–56, 79]. Plaintiffs also allege that Dr. Rademacher, through the Purchase Agreement, represented that he was not aware of any facts that could result in legal actions or litigation, which was false; in reality, Dr. Rademacher "was aware that a prior employee who had sought unemployment benefits for which she was denied payment still had time before which she had to file a lawsuit." [*Id.* at ¶¶ 23–24]. That former employee did file a lawsuit after ownership of ReGen was transferred to Ms. Anders. [*Id.* at ¶ 24].

---

[1] The Complaint references a singular "Purchase Agreement," *see, e.g.*, [Doc. 1 at ¶¶ 3, 18–23 (referencing a single agreement), 31], but also separately references an unknown number of "purchase agreements," *see, e.g.*, [*id.* at ¶¶ 17, 26, 30, 32]. Whether a single agreement or multiple agreements exist is not material to the Court's resolution of the Motion to Dismiss.

Plaintiffs also allege that Dr. Rademacher "remains responsible for amounts [owed by ReGen]" that "originated during Dr. Rademacher's primary ownership of ReGen" but did not come to light until after the ownership transfer. [*Id.* at ¶ 65]. According to Plaintiff, Dr. Rademacher remains responsible for over $100,000 in unpaid invoices. [*Id.* at ¶ 66]. And, after the sale, Dr. Rademacher "accessed the ReGen business account to make payments on obligations he had personally incurred as personal expenses." [*Id.* at ¶ 86]. Plaintiffs allege that Dr. Rademacher has stolen or misappropriated funds from ReGen. [*Id.* at ¶¶ 107–08].

ReGen and Ms. Anders initiated this lawsuit on April 4, 2025. *See* [*id.*]. They assert five claims against Dr. Rademacher: (1) fraudulent inducement ("Claim One"), [*id.* at ¶¶ 88–93]; (2) breach of fiduciary duty ("Claim Two"), [*id.* at ¶¶ 94–99]; (3) breach of contract ("Claim Three"), [*id.* at ¶¶ 100–04]; (4) civil theft ("Claim Four"), [*id.* at ¶¶ 105–14]; and (5) unjust enrichment ("Claim Five"), [*id.* at ¶¶ 115–20]. Defendant moves to dismiss all but the breach of contract claim. [Doc. 11].

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

Dr. Rademacher asks this Court to dismiss Claims One, Two, Four, and Five for failure to state a claim under Rule 12(b)(6). The Court addresses the Parties' arguments on a claim-by-claim basis below.

### I. Claim One: Fraudulent Inducement

In Claim One, Plaintiffs allege that Dr. Rademacher made false statements and misrepresentations to induce Ms. Anders to purchase ReGen. [Doc. 1 at ¶¶ 88–93]. Defendant seeks dismissal of this claim, arguing (1) Plaintiffs' allegations fail to meet the heightened pleading requirements of Rule 9; (2) Plaintiffs fail to allege facts supporting the elements of a fraudulent inducement claim; and (3) the claim is barred by the economic loss rule. [Doc. 11 at 7–12].

To state a claim for fraudulent inducement, a plaintiff must allege "(1) the defendant made a fraudulent misrepresentation of fact or knowingly failed to disclose a fact that defendant had a duty to disclose; (2) the fact was material; (3) the plaintiff relied on the misrepresentation or failure to disclose; (4) the plaintiff's reliance was justified; and (5) the reliance resulted in damage to the plaintiff." *Granite Southlands Town Ctr., LLC v. Provost*, 445 F. App'x 72, 75 (10th Cir. 2011) (applying Colorado law). In addition to pleading these elements, however, a plaintiff asserting a claim for fraudulent inducement must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, the plaintiff "must 'set forth the time, place and contents of the false representation, the identity of the party making the false

4

statements and the consequences thereof.'" *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). The purpose of this heightened requirement is to afford the defendant fair notice of the plaintiff's claims, *id.* at 1255, and to "ensure that the complaint provides the minimum degree of detail necessary to begin a competent defense," *Fulghum v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015) (quotation omitted).

Dr. Rademacher first argues that Plaintiffs fail to adequately allege a claim for fraudulent inducement because their allegations do not meet the heightened standards of Rule 9. [Doc. 11 at 8–9]. Specifically, he asserts that Plaintiffs do not "identify any specific statements to support this claim" or "identify any specific dates or places for the alleged statements." [*Id.* at 8]. The Court respectfully disagrees. The Complaint alleges, among other things, that Dr. Rademacher made the following misrepresentations or omissions:

- During discussions about Ms. Anders purchasing Dr. Rademacher's ownership interest in ReGen, Dr. Rademacher "assured [Ms. Anders] that he would remain responsible for certain accounts payable," i.e., "those that were incurred during his tenure as majority owner and manager of the practice." [Doc. 1 at ¶ 12]. Despite this, certain outstanding invoices from Dr. Rademacher's tenure have not been paid. [*Id.* at ¶¶ 61–68].

- The Purchase Agreement stated that ReGen would distribute its cash in hand and in bank accounts to Dr. Rademacher, which Plaintiff asserts "ma[de] it appear that ReGen had more than the amount [it] would 'retain' in its reserve." [*Id.* at ¶¶ 18–19].

- The Purchase Agreement stated that there were no known legal claims against ReGen and that Mr. Rademacher was "not aware of any facts that [he] reasonably anticipate[d] may result" in legal proceedings. [*Id.* at ¶ 23 (emphasis omitted)]. However, Mr. Rademacher was aware that a prior employee had employment-related claims that could be asserted against ReGen. [*Id.* at ¶¶ 24, 69–72].

- The Purchase Agreement falsely stated that ReGen and Dr. Rademacher had

5

filed all required tax returns.  [*Id.* at ¶¶ 25–26].

These allegations sufficiently describe the contents of the allegedly false statements, the identity of the party making the false statements (Dr. Rademacher), and the place of the alleged misstatements (within the Purchase Agreement).

Plaintiffs further allege that Dr. Rademacher and Ms. Anders signed the Purchase Agreement "in October and November of 2023," which provides a sufficiently specific timeframe for purposes of Rule 9(b).  *See* [Doc. 1 at ¶ 16]; *see also* [Doc. 11-1 (the Purchase Agreement)]; *cf. Aaron H. Fleck Revocable Tr. through Fleck v. First W. Tr. Bank*, No. 21-cv-01073-CMA-GPG, 2022 WL 1193452, at *7 (D. Colo. Feb. 17, 2022) (finding that the plaintiff's "factual allegations [were] sufficiently temporally grounded within a brief period between February to May 2018" for purposes of Rule 9), *report and recommendation adopted*, 2022 WL 872633 (D. Colo. Mar. 23, 2022).[2]  And finally, Plaintiffs allege that Ms. Anders relied upon these misstatements in deciding to purchase ReGen.  [Doc. 1 at ¶¶ 54, 89, 91–92].  The Court concludes that these allegations meet the requirements of Rule 9.

In the alternative, Dr. Rademacher challenges a *portion* of Claim One under Rule 12(b)(6).  Specifically, he argues that to the extent the fraudulent inducement claim

---

[2] With respect to any alleged misrepresentations that were *not* made within the Purchase Agreement, "not every allegation of fraudulent misconduct must be pleaded with particularity for a complaint to survive at the motion to dismiss stage."  *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1280 (10th Cir. 2023).  "[A] complaint may . . . satisfy Rule 9(b)'s requirements when its allegations are sufficiently particularized when 'taken as a whole.'"  *Id.* (emphasis omitted) (quoting George, 833 F.3d at 1257); *see also United States ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1173 (10th Cir. 2010) ("The federal rules do not require a plaintiff to provide a factual basis for every allegation.  Nor must every allegation, taken in isolation, contain all the necessary information [under Rule 9].").  Reviewing the Complaint in its entirety, the Court finds that it contains adequate allegations to be sufficiently particularized as a whole.

"relates to the lawsuit of a former employee," Plaintiffs cannot state a claim under Rule 12(b)(6) because they do not allege a "false representation of material *past or present* fact." [Doc. 11 at 10 (quoting Colo. Jury Instructions, Civ. § 19:1 (4th ed. Apr. 2025 update))]. Dr. Rademacher asserts that because the employee's lawsuit was filed *after* Ms. Anders bought ReGen, the lawsuit provides no support for a fraudulent inducement claim. [*Id.*]. However, this argument disregards the fact that, as pleaded, Dr. Rademacher knew of the employee's *potential* legal claims and still falsely represented that he was *not* aware of those potential claims. See [Doc. 1 at ¶¶ 23–24, 69]. Plaintiffs do not, as Defendant suggests, "seek to hold Defendant accountable for failing to predict a lawsuit," [Doc. 11 at 10]; rather, they allege that Dr. Rademacher concealed his knowledge of ReGen's potential liabilities. Furthermore, the Court is respectfully unpersuaded by Defendant's contention that the allegations about his knowledge of the employee's potential claims are "conclusory." See [*id.*]. It is unclear to the Court how Plaintiffs could provide more detailed facts establishing Dr. Rademacher's subjective knowledge—information that is solely within his possession—at the pleading stage and without any discovery. See [Doc. 21 (Judge Chung staying all discovery pending resolution of the Motion to Dismiss)].[3]

---

[3] Defendant also argues that Ms. Anders "was in a much better position to have anticipated this lawsuit than" Dr. Rademacher, as Ms. Anders hired and directly supervised the employee and had "firsthand knowledge" of the events underlying her claims. [Doc. 11 at 10 n.6]. In support, Defendant relies on and cites to the complaint in the employee's federal lawsuit, arguing that the Court may take judicial notice of the complaint because it constitutes "material[] in a court file." [*Id.* at 5 n.5]; *see also* [Doc. 11-2]. However, while the Court may take judicial notice of court records, *Binford v. United States*, 436 F.3d 1252, 1256 & n.7 (10th Cir. 2006), the function of judicial notice is a limited one. The Court can take judicial notice of court records only to show their contents, not to provide the truth of the matters asserted therein. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Moreover, this sort of factual dispute is not

7

Finally, Dr. Rademacher argues that the fraudulent inducement claim is barred by the economic loss rule. [Doc. 11 at 11]. Colorado's economic loss rule dictates that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). Defendant contends that, through Claim One, Plaintiffs are attempting "to recover purely economic damages based upon a duty covered by contract," so the claim is barred by the economic loss rule. [Doc. 11 at 12]. Plaintiffs respond that "the duties [at issue] arose independently from the contractual duties imposed." [Doc. 12 at 8]. They also contend that the Complaint includes allegations of "misrepresentations from prior to the Purchase Agreement," so the economic loss rule does not apply. [*Id.* at 9].

The Court respectfully declines to reach the Parties' substantive arguments about the economic loss doctrine at this time. Courts in this District routinely decline to dismiss claims at the pleading stage based on the economic loss rule. *See, e.g.*, *Bartch v. Barch*, No. 18-cv-03016-RBJ-NYW, 2022 WL 3597119, at *3 (D. Colo. May 9, 2022) ("I decline to dismiss the conversion claim at this stage. . . . Plaintiff is permitted to plead the contract and conversion claims in the alternative."); *GEA Power Cooling Sys., LLC v. Bechtel Power Corp.*, No. 09-cv-02051-RPM, 2010 WL 1241290, at *1 (D. Colo. Mar. 18, 2010) ("While an election may be required at some time before trial, a ruling on the applicability of the economic loss rule at this pleading stage would be premature."); *M.M.A. Design,*

---

appropriately raised in a Rule 12(b)(6) motion to dismiss, which is designed to challenge the *sufficiency* of the operative pleading's allegations, not dispute the veracity of them. *Casanova*, 595 F.3d at 1124 (a court ruling on a Rule 12(b)(6) motion to dismiss accepts all well-pleaded allegations as true).

8

*LLC v. Capella Space Corp.*, No. 18-cv-02957-MSK-NRN, 2019 WL 3973935, at *4 (D. Colo. Aug. 21, 2019) (declining to address economic loss rule, as it was "a matter that [was] best deferred to future summary judgment proceedings"). And "inconsistent contract and tort claims may be pled in the alternative." *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, No. 11-cv-00970-PAB-MEH, 2013 WL 6925132, at *3 (D. Colo. Dec. 13, 2013), *aff'd*, 771 F.3d 1230 (10th Cir. 2014); *see also* Fed. R. Civ. P. 8(d)(3). This case is in its early stages; discovery has not commenced, and Defendant has not filed an answer. The Court declines to try to ascertain the economic loss rule's applicability in this procedural posture.[4]

For all of these reasons, the Motion to Dismiss is **DENIED** to the extent it seeks dismissal of Claim One.

## II. Claim Two: Breach of Fiduciary Duty

Next, Defendant seeks dismissal of Claim Two on the grounds that it is barred by the economic loss rule. [Doc. 11 at 11]. For the reasons discussed above in Section I, the Court declines to dismiss the breach of fiduciary duty claim based on the economic loss rule at this early stage. *Bartch*, 2022 WL 3597119, at *3; *GEA Power Cooling Sys.*, 2010 WL 1241290, at *1. The Motion to Dismiss is **DENIED** as to Claim Two.

---

[4] Moreover, "[t]o determine whether a contracting party owes an independent common law duty of care, [courts] consider (1) whether the relief sought in tort is the same as the contractual relief; (2) whether there is a recognized common law duty of care; and (3) whether the tort duty differs in any way from the contractual duty." *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 506 P.3d 108, 118 (Colo. App. 2021) (quotation omitted). The Parties do not address these factors in their briefing. *See* [Doc. 11 at 11–12; Doc. 12 at 8–9]. The Court declines to undertake a sua sponte analysis of these factors.

### III. Claim Four: Civil Theft

To state a claim of civil theft, "a plaintiff must allege the elements of criminal theft: that the defendant 'knowingly obtain[ed], retain[ed], or exercise[d] control over anything of value of another without authorization or by threat or deception, and act[ed] intentionally or knowingly in ways that deprive[d] the other person of the property permanently.'" *Scott v. Scott*, 428 P.3d 626, 633 (Colo. App. 2018) (quoting *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016)). And "for a civil theft claim to lie, the party claiming civil theft must have a proprietary interest in the property claimed to be stolen." *Million v. Grasse*, 549 P.3d 1043, 1051 (Colo. App. 2024). "If the property that is the subject of the civil theft claim is money, in order for the plaintiff to have a proprietary interest in the money, there must be either a specifically identifiable account or a wrongful obtaining, retention, or exercise of control over specifically identifiable funds that belong to the plaintiff." *Id.* at 1051–52 (footnote omitted).

Defendant argues that Plaintiffs' civil theft claim should be dismissed because the Complaint does not point to specifically identifiable funds that Dr. Rademacher allegedly stole. [Doc. 11 at 15]. He asserts that Plaintiffs' allegation that Dr. Rademacher obtained "readily identifiable" funds in the form of "amounts [he] paid from accounts that he no longer should have been accessing" or "amounts that [he] received through unlawful means from the IRS or other entities like the Card Settlement Fund administrator," *see* [Doc. 1 at ¶ 108], is conclusory and insufficient to state a claim, [Doc. 11 at 15].

Plaintiffs respond that "the allegations in the Complaint go through significant detail in identifying the specific funds and invoices at issue here, to the extent they are identifiable by Plaintiffs." [Doc. 12 at 9]. In support, Plaintiffs direct the Court to paragraph

10

65 of their Complaint.  [*Id.*].  But paragraph 65 does not, as Plaintiffs suggest, identify any funds that Dr. Rademacher allegedly stole from Plaintiffs; rather, paragraph 65 identifies "amounts that have come to light" that "originated during Dr. Rademacher's primary ownership of ReGen" and for which Dr. Rademacher allegedly "remains responsible." [Doc. 1 at ¶ 65]; *see also* [*id.* at ¶¶ 67–68 (further alleging that Dr. Rademacher "only paid a portion" of one of the invoices identified in paragraph 65 and "fail[ed] . . . to pay for . . . comparable . . . invoices from the same period")].  Plaintiffs do not explain, and the Court cannot ascertain, how the invoices, charges, and expenses identified in paragraph 65 and allegedly unpaid by Dr. Rademacher constitute funds *stolen* from Plaintiffs.[5]

Plaintiffs also suggest that their allegations about certain settlement funds from a "Payment Card Settlement" provide sufficient support to their civil theft claim.  [Doc. 12 at 10].  Plaintiffs allege that ReGen "has applied for" those settlement funds and that, after applying, Plaintiffs learned "that another party had already sought to recoup the same funds."  [Doc. 1 at ¶¶ 81–82].  They imply that although they are unable to confirm the unnamed third party's identity, the third party must have been Dr. Rademacher because "there is no other person authorized to apply for the funds."  [*Id.* at ¶¶ 83–84].  In his Motion to Dismiss, Defendant argues that these allegations are inadequate because (1) the funds are not specifically identified by amount or location; (2) Plaintiffs concede that it is unclear whether it was Dr. Rademacher who applied for the funds; and

---

[5] Plaintiffs do not allege that they paid these invoices, *see* [Doc. 1 at ¶¶ 105–14], and they do not appear to proceed on a theory that any payments Plaintiff made on these invoices could form the basis of a civil theft claim, *see* [Doc. 12 at 9–10].  Indeed, Plaintiffs only allege that the funds Dr. Rademacher allegedly stole are amounts he *paid* from accounts he should not have been accessing or funds he *received* through unlawful means. [Doc. 1 at ¶ 108].

11

(3) Plaintiffs do not allege that they are entitled to the funds and do not allege that any person is actually in possession of the funds. [Doc. 11 at 16].

Plaintiffs respond by focusing on Defendant's first argument, asserting that the Complaint sufficiently connects Dr. Rademacher as the third party who applied for the funds. [Doc. 12 at 10]. Although this argument is well taken, as the Complaint clearly connects the dots between the unidentified third-party applicant and Dr. Rademacher, [Doc. 1 at ¶¶ 83–85], Plaintiffs do not adequately address Defendant's other challenges to this theory of civil theft. Specifically, the Court agrees with Defendant that the allegations about the Payment Card Settlement funds do not adequately allege that Dr. Rademacher obtained, retained, or exercised control over anything over which Plaintiffs have a proprietary interest, so as to state a civil theft claim. *Scott*, 428 P.3d at 633. Indeed, the Complaint does not allege that Dr. Rademacher *obtained* any portion of the Payment Card Settlement funds—it alleges only that a third party, and presumably Dr. Rademacher, filed a claim for the funds. *See* [Doc. 1 at ¶¶ 81–85]. But this alone is insufficient to satisfy the elements of a civil theft claim: if Dr. Rademacher did not obtain the funds, he could not have stolen them. Accordingly, the Court agrees with Defendant that Plaintiffs have not alleged a plausible civil theft claim with respect to the Payment Card Settlement funds.

Finally, Plaintiffs assert that their allegations that Dr. Rademacher stole IRS refund checks, which were owed to ReGen, are sufficient to support a civil theft claim. [Doc. 12 at 9–10]. Defendant argues that these allegations are insufficient to state a claim because they "fail to identify any specific or identifiable amounts, or the total amount of refunds at issue." [Doc. 11 at 16]. The Court respectfully disagrees with Defendant at this

12

preliminary stage of the case. The Court does not read *Million* to require that, in all cases and in all circumstances, a plaintiff must identify a specific amount of money allegedly stolen to adequately state a civil theft claim. In *Million*, the Colorado Court of Appeals affirmed the dismissal of a civil theft claim that was based on the (lack of) distribution of funds pursuant to a settlement agreement. 549 P.3d at 1046. The settlement agreement in that case "provided a formula for determining the amount, if any, owed to [the plaintiff] on the sales of the designated properties," but "[i]t did not identify a specific amount of money payable to" the plaintiff. *Id.* at 1052. And "due to imprecisions in the parties' Settlement Agreement," it was not possible to determine what amount was owed to the plaintiff "at the time [the defendant] distributed the funds." *Id.* Because "the net proceeds were not either specifically identifiable funds or funds from a specifically identifiable account," the Colorado Court of Appeals concluded that the plaintiff "did not have a sufficient proprietary interest in the money, precluding a civil theft claim." *Id.* In other words, the funds claimed by the plaintiff in *Million* were so amorphous and indefinite that the plaintiff could not plausibly assert a proprietary interest in them.

Here, unlike *Million*, Plaintiffs have alleged the specifically identifiable funds allegedly stolen by Dr. Rademacher—the tax refunds owed to ReGen by the IRS, but allegedly improperly rerouted to and obtained by Dr. Rademacher. *See* [Doc. 1 at ¶¶ 42–46, 54–56, 75–79]. The Court does not find that Plaintiffs were required to specifically calculate the entire amount allegedly stolen by Dr. Rademacher, especially where that information may not be available to Plaintiffs prior to discovery. *See* [*id.* at ¶ 79 (Plaintiffs alleging that there are more refund checks at issue, but "none of them have been provided to ReGen or Ms. Anders")]. Plaintiffs sufficiently provide notice to Defendant of the basis

of this portion of the civil theft claim and allege facts plausibly establishing their proprietary interest in the refunds.  See [*id.* at ¶¶ 20, 22, 46].

Accordingly, the Court concludes that insofar as the civil theft claim is based on the alleged theft of the IRS refund checks, Plaintiffs' allegations are sufficient to state a claim at this time.  But for all other portions of the civil theft claim, the Court finds that Plaintiffs' allegations are insufficient to state a claim under Rule 12(b)(6).  The Motion to Dismiss is thus **GRANTED in part** and **DENIED in part** as to Claim Four.  Claim Four **REMAINS** to the extent it is based on the IRS refund checks, but it is **DISMISSED without prejudice** in all other respects.[6]

## IV.   Claim Five:  Unjust Enrichment

Finally, Defendant argues that Plaintiffs' unjust enrichment claim is "barred by contract" and must be dismissed.  [Doc. 11 at 17].  It is well settled that, generally, "a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract."  *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003).  But if "(1) the express contract fails or is rescinded," or "(2) the claim covers matters that are outside of or arose after the contract," then a plaintiff may still recover for unjust enrichment despite the existence of a contract.  *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 382 P.3d 821, 833 (Colo. 2016).  Defendant relies on

---

[6] Defendant asks for dismissal with prejudice.  [Doc. 11 at 1, 18].  However, Defendant does not address the standard for dismissal with prejudice or articulate why dismissal with prejudice is appropriate.  "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  The Court declines to undertake a futility analysis absent argument from the Parties and declines to rule that amendment would be futile before the Parties have engaged in discovery.

14

the recent Colorado Supreme Court case of *Board of Governors of the Colorado State University v. Alderman*, 563 P.3d 1205 (Colo. 2025), to argue that dismissal of the unjust enrichment claim is appropriate, *see* [Doc. 11 at 17–18].

In *Alderman*, the Colorado Supreme Court reviewed an appellate court decision essentially ruling that, because the plaintiffs' breach of contract *claims* failed (and they could not recover on those claims),[7] the plaintiffs could proceed on their unjust enrichment claims.  *See* 563 P.3d at 1210–11.  The Colorado Supreme Court disagreed with the intermediate appellate court's decision, finding that the lower court had "conflated the failure of [the] breach of contract *claim* with the failure of the contract *itself*." *Id.* at 1213. In other words, although a plaintiff may pursue an unjust enrichment claim when the contract itself fails (i.e., it is legally unenforceable), it does not follow that "a plaintiff may pursue an unjust enrichment claim when that plaintiff's breach of contract claim fails because the defendant did not breach the contract." *Id.* at 1214.  Notably, in *Alderman*, there was "no dispute that an implied-in-fact contract" existed between the parties. *Id.* at 1213.  So because "a party cannot properly state a claim for unjust enrichment when a legally enforceable contract exists that covers the same subject matter and that contract has not been abrogated or rescinded," the Colorado Supreme Court decided that the plaintiffs' unjust enrichment claims failed as a matter of law.  *Id.*

Even in light of *Alderman*, however, this Court is respectfully unpersuaded that

---

[7] For additional context, the *Alderman* case involved college students who sued their university for breach of contract after the school temporary moved to remote classes during the COVID-19 pandemic.  563 P.3d at 1207.  Because a state statute authorizes the temporary suspension of "a university in case of fire, the prevalence of fatal diseases, or other unforeseen calamity," Colo. Rev. Stat. § 23-30-111, the state trial court concluded that the breach of contract claims could not succeed, *Alderman*, 563 P.3d at 1209.

15

dismissal of the unjust enrichment claim is appropriate at this juncture. "Absent any conflicting constitutional requirements, federal statutes or Federal Rules of Civil Procedure, a federal district court sitting in diversity applies federal procedural law and state substantive law." *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1203 (10th Cir. 2012). Pleading requirements in federal court are governed by federal law. *Strong v. Cochran*, No. 2:14-cv-00788-TC, 2017 WL 4620984, at *5 (D. Utah Oct. 13, 2017) ("[F]ederal law provides the legal standard to determine whether the Defendants are entitled to dismissal under Rule 12(b)(6)."). And relevant here, "[t]he Federal Rules of Civil Procedure allow a party to include alternative or inconsistent claims in its complaint." *United Water & Sanitation Dist. v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1058 (D. Colo. 2020) (citing Fed. R. Civ. P. 8(d)(2), (3)). Consistent with Rule 8, courts in this District consistently recognize that "a party may plead breach of contract and unjust enrichment claims in the alternative." *Id.* While the ultimate question of whether Plaintiffs can proceed on (and succeed on) their unjust enrichment claim will be governed by Colorado substantive law, Rule 8 dictates that, at this juncture and in federal court, Plaintiffs may plead inconsistent claims. Fed. R. Civ. P. 8(d)(3).

Moreover, unlike *Alderman*, the Court cannot definitively say at this early stage that there is "no dispute" that a valid contract exists. 563 P.3d at 1213. In their Complaint, Plaintiffs allege that the "purchase agreements constitute valid and enforceable contracts" between Ms. Anders and Dr. Rademacher, [Doc. 1 at ¶ 101], and Defendant suggests in his Reply that this allegation is sufficient to demonstrate that dismissal of the unjust enrichment claim is appropriate, *see* [Doc. 13 at 9]. But Plaintiffs' assertion is a legal conclusion that is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 ("[T]he

16

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). And because Defendant has not filed an answer in this case, the Court is presently unable to determine whether any agreement or dispute exists about the validity or enforceability of the Purchase Agreement.

At this early stage in the proceedings—prior to the filing of an answer and prior to discovery—the Court finds it would be premature to dismiss the unjust enrichment claim as duplicative. Accordingly, the Motion to Dismiss is respectfully **DENIED** to the extent it seeks dismissal of Claim Five. Defendant may renew this argument at a later stage in the case, if appropriate.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Defendant's Partial Motion to Dismiss [Doc. 11] is **GRANTED in part** and **DENIED in part**;

(2) Claims One, Two, Three, and Five all **REMAIN**; and

(3) Claim Four **REMAINS** only with respect to the theory based on the IRS refund checks, but is **DISMISSED without prejudice** in all other respects.

DATED: January 28, 2026                BY THE COURT:

_____
Nina Y. Wang
United States District Judge

17